# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:20-cr-07 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| SHANE HOOVER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

United States Magistrate Judge Keith A. Pesto ordered that defendant Shane Hoover ("Defendant") be detained pending trial. (ECF No. 1965). Defendant has since filed a "Petition to Revoke Order of Detention," (ECF No. 2000), and the Court held a hearing on this petition on July 27, 2023. (ECF No. 2072). Having reviewed the matter of Defendant's pretrial detention de novo, *see United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985), the Court **DENIES** Defendant's petition for the reasons provided below.

## I.      BACKGROUND

The Court offers here a detailed account of Defendant's pretrial release based largely on allegations made by the United States Probation Office in filings between August 2020 and March 2023. These allegations are not the basis for the Court's findings of fact in Section II, *infra*, but they help place those findings in context.

Defendant was originally charged in the present matter on June 3, 2020. (ECF No. 3).[1]  On

---

[1] Operative here is the Superseding Indictment filed August 4, 2020. (ECF No. 480). Defendant was charged at Count Two of the Superseding Indictment with conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine, and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii). (*Id.* at 4).

June 4, 2020, Magistrate Judge Pesto issued a warrant for Defendant's arrest.  (ECF No. 51).  On

June 9, 2020, Defendant made his initial appearance before the Court and was released on a

$50,000.00 unsecured bond with pretrial supervision conditions.  (ECF Nos. 144–45).  The

conditions of Defendant's release included, inter alia:

> (a) "The defendant must not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner."  (ECF No. 145 at 2).

> (b) "The defendant must participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services officer or supervising officer."  (ECF No. 145 at 2).

> (c) "The defendant must not violate federal, state, or local law while on release." (ECF No. 145 at 1).

> (d) "The defendant must report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops."  (ECF No. 145 at 2).

On August 7, 2020, the Probation Office filed a petition requesting that the Court revoke

Defendant's pretrial release and issue a warrant for his arrest.  (ECF No. 507).  In this petition, the

Probation Office alleged that, between June 26, 2020, and August 3, 2020, Defendant's supervising

probation officer—Probation Officer Danylle Ford—repeatedly attempted to contact Defendant

but was unable to reach him or determine his whereabouts.  (*Id.*).  Magistrate Judge Pesto granted

the petition and issued an arrest warrant on the same date.  (ECF Nos. 507–08).

Defendant was arrested in the Middle District of Pennsylvania at some point early in the

fall of 2020 and was legally committed to this District on October 22, 2020.  (ECF No. 729).

However, Defendant was apparently detained at around that time for state court charges in the

Court of Common Pleas of Centre County, Pennsylvania, and he was found guilty of receiving

stolen property in that Court on November 24, 2020. *Commw. of Pa. v. Shane Thomas Hoover*, No. CP-14-CR-0000617-2020 (filed June 24, 2020). Defendant received a prison sentence of 39 days to 23 months for this conviction, and he was paroled on or about December 13, 2020. *Id.*; (ECF No. 2076 at 17:3–11). Following his parole and pursuant to the August 3 arrest warrant, Defendant was transferred to the Columbia County Jail and then, in turn, to the Northeast Ohio Correctional Center. (ECF No. 2038 at 3:17–24, 5:21–23).

Defendant requested a detention hearing on January 5, 2021, (ECF No. 836), which was started on February 26, 2021, (ECF No. 938), and finished on March 10, 2021. (ECF No. 965). On March 12, 2021, Magistrate Judge Pesto released Defendant into the custody of a third-party custodian (Defendant's father, Thomas Hoover) with the added condition of home detention. (ECF No. 970).

On August 17, 2021, the Probation Office filed a petition with the Court, noting improvements on Defendant's part and requesting that the Court amend Defendant's conditions of release to remove the home detention condition. (ECF No. 1157). However, the Probation Office also alleged the following in that petition:

(a) On May 14, 2021, Officer Ford received information that Defendant had law enforcement contact with Pennsylvania State Police on May 7, 2021, at about 3:00 a.m. (ECF No. 1157 at 1). Defendant failed to promptly report this law enforcement contact to Officer Ford. (*Id.*).

(b) On May 20, 2021, Officer Ford called Defendant to discuss his law enforcement contact from May 7, 2021. (ECF No. 1157 at 1). Defendant informed Officer Ford that he had gone to Sheetz with his girlfriend during the night at issue, and that his third-party custodian was aware at the time that he had done so. (*Id.*). However, Officer Ford also spoke with Thomas Hoover on May 20, 2021, and the latter advised that he was not in fact aware that Defendant had left the residence on May 7, 2021, in violation of home detention. (*Id.*). (*See also* ECF No. 2076 at 10:13–15).

3

On August 19, 2021, Magistrate Judge Pesto removed the condition of home detention consistent with the Probation Office's recommendation.  (ECF No. 1159).

On December 3, 2021, the Probation Office submitted a status report recommending that Defendant remain on bond to provide him with a final opportunity to comply with his release conditions.  (ECF No. 1313).  In this status report, the Probation Office alleged the following:

(a) On March 29, 2021, Defendant began substance abuse treatment at Quest Services, Inc. ("Quest").  (ECF No. 1313 at 2).

(b) On September 2, 2021, Defendant reported to Officer Ford that he submitted a urine specimen at treatment that returned positive for methamphetamine. (ECF No. 1313 at 1).  He also admitted that he used methamphetamine twice about 13 days prior to that date.  (*Id.*).

(c) On October 14, 2021, Quest informed Officer Ford that Defendant had not been attending treatment as scheduled and was pending unsuccessful discharge. (ECF No. 1313 at 2).  On November 30, 2021, Officer Ford requested a treatment update from Quest and was informed that Defendant had been unsuccessfully discharged on October 25, 2021, due to loss of contact.  (*Id.*).  Defendant's last day of treatment at Quest was September 22, 2021.  (*Id.*).

(d) On November 18, 2021, traffic charges were filed at Magisterial District Court 46-3-03, in Clearfield County, Pennsylvania, charging Defendant with a summary traffic offense that occurred on November 18, 2021.  (ECF No. 1313 at 2).  Defendant failed to report this law enforcement contact to the Probation Office.  (*Id.*).

On February 3, 2022, the Probation Office submitted a petition that reported substantial regression in Defendant's compliance and requested a bond revocation hearing.  (ECF No. 1416). In this petition, the Probation Office alleged the following:

(a) On December 1, 2021, Officer Ford spoke with Defendant and instructed him to report to the Probation Office on December 7, 2021.  (ECF No. 1416 at 1). Defendant failed to report thereto and did not contact Officer Ford to reschedule.  (*Id.*).  Defendant also failed to report to his subsequent appointments scheduled on December 21, 2021, and December 29, 2021.  (*Id.* at 1–2).

(b) On December 22, 2021, Defendant informed Officer Ford that he had a substance abuse intake with Pyramid Healthcare ("Pyramid") via phone on December 20, 2021, and that Pyramid was allowing him to resume substance abuse treatment twice per week. (ECF No. 1416 at 1). On February 3, 2022, Officer Ford learned from Pyramid that Defendant was discharged against facility advice for loss of contact on January 27, 2022, after failing to attend his intake appointment or any recommended treatment. (*Id.* at 2).

At the hearing on this petition held February 10, 2022, Magistrate Judge Pesto ordered Defendant to promptly reestablish outpatient substance abuse treatment and report to the Probation Office for a drug test. (ECF No. 1445).

On March 2, 2022, the Probation Office filed a petition informing the Court that Defendant did not comply with its February 10 order and requesting that the Court schedule another bond revocation hearing. (ECF No. 1483). When Defendant did not appear at the hearing on this petition scheduled for March 21, 2022, Magistrate Judge Pesto issued a warrant for Defendant's arrest. (ECF Nos. 1520–21). Following Defendant's arrest, another revocation hearing was held before the Magistrate Judge on May 25, 2022, and Defendant was subsequently detained as a flight risk. (ECF Nos. 1618–19).

On September 1, 2022, Defendant moved to revoke the May 25 detention order. (ECF No. 1752). On September 6, 2022, the Court ordered that Defendant be released to inpatient drug treatment and reside with his mother upon completion of the treatment program. (ECF No. 1755). From November 2022 through January 2023, the Probation Office filed multiple notices of release condition violations but did not recommend any action on the Court's part. (ECF Nos. 1818, 1853, 1881). In these notices, the Probation Office alleged the following:

(a) On October 19, 2022, Defendant successfully completed an inpatient program at Gaudenzia Erie, Inc. ("Gaudenzia"), and was transported to his court-

ordered address with his mother. (ECF No. 1818 at 1). However, on October 20, 2022, Defendant's new supervisory probation officer—Probation Officer Kelsey Cotton—conducted a field contact at Defendant's residence with a urinalysis test. (*Id.*). The test results from this urine sample later returned positive for methamphetamines. (*Id.*). On November 2, 2022, Defendant admitted to Officer Cotton that he had used methamphetamine the night he had gotten out of Gaudenzia and into the next day, and he made a signed admission to that effect. (*Id.* at 2).

(b) On October 25, 2022, Defendant missed a scheduled appointment with the Probation Office. (ECF No. 1818 at 2).

(c) On November 2, 2022, Defendant admitted to Officer Cotton that he had used methamphetamine a few days earlier and made a signed admission to that effect. (ECF No. 1818 at 2). A urine sample collected on that date tested positive for amphetamines. (*Id.*).

(d) On November 14, 2022, Defendant reported to the Probation Office for a drug test. (ECF No. 1853 at 1). Although Defendant initially denied use of any substances, the urinalysis test results that Officer Cotton received on November 23, 2022, were presumptive positive for amphetamines. (*Id.*). On November 28, 2022, Officer Cotton spoke with Defendant about these test results and Defendant admitted that he had used methamphetamine a couple of days after his prior drug test, thinking that it would not be in his system by the next drug test. (*Id.*). On December 3, 2022, Officer Cotton received lab results confirming that this sample tested positive for amphetamines and methamphetamines. (*Id.*).

On February 13, 2023, the Probation Office petitioned the Court to issue an arrest warrant and have Defendant detained pending trial. (ECF No. 1919). It supplemented this petition on March 10, 2023, (ECF No. 1950), and again on March 17, 2023. (ECF No. 1960). In these petitions, the Probation Office alleged the following:

(a) On December 28, 2022, CenClear Drug and Alcohol Out-Patient Services ("CenClear") sent Defendant a noncompliance letter to inform him that he was at risk of an unsuccessful discharge due to a lack of communication and attendance. (ECF No. 1960 at 2). The letter stated that Defendant had until January 16, 2023, to contact them to resume services, in order to avoid a lapse in treatment and an unsuccessful discharge. (*Id.*).

6

(b) On or about December 29, 2022, Defendant used methamphetamine. (ECF No. 1960 at 1).

(c) On January 3, 2023, Defendant failed to report for intake at an inpatient drug treatment program. (ECF 1960 at 1).

(d) Between January 5, 2023, and January 26, 2023, Defendant was minimally responsive to Supervisory Probation Officer Stacey Xander's attempts to reach him and coordinate inpatient services. (ECF No. 1960 at 1). On January 6, 2023, Defendant confirmed to Supervisor Xander that he had received CenClear's December 28 letter and took responsibility for failing to attend the scheduled sessions. (*Id.* at 2).

(e) On January 27, 2023, Defendant was admitted into an inpatient treatment program at Allegiance Rehabilitation Center ("Allegiance"). (ECF No. 1960 at 1). On February 10, 2023, Defendant left the program against facility advice. (*Id.*). Defendant's abrupt departure did not give Allegiance an opportunity to set up aftercare services with Defendant. (*Id.*).

(f) On February 10, 2023, Officer Cotton spoke with Defendant's counselor at CenClear, who informed Officer Cotton that Defendant left Allegiance against facility advice. (ECF No. 1960 at 1). According to this counselor, Defendant had not contacted anyone at CenClear and would be discharged unsuccessfully should he fail to call and set up his aftercare services. (*Id.*). Although Defendant was supposed to be completing one individual session per week and three group sessions per week, he had failed to attend any of his group sessions and attended only one individual session. (*Id.* at 2).

(g) On February 13, 2023, Officer Cotton spoke with Expressions Counseling Services ("Expressions") and learned that Defendant also had not been attending his mental health treatment sessions. (ECF No. 1960 at 2). Defendant had completed his intake for Expressions on November 9, 2022, and had attended his first session on November 16, 2022, but he failed to attend the appointments scheduled for November 30, 2022, and December 14, 2022. (*Id.*). Defendant did not attend any subsequent sessions or contact Expressions to resume services. (*Id.*).

(h) On February 13, 2023, Officer Cotton attempted to call Defendant but found that Defendant's phone number was out of service. (ECF No. 1960 at 2).

On February 28, 2023, Magistrate Judge Pesto granted the Probation Office's February 13 petition and issued an arrest warrant. (ECF No. 1937–38). As the Probation Office notes in its

March 10 supplemental petition, Defendant was arrested on or about March 4, 2023, by Pennsylvania State Police for suspected driving under the influence of controlled substances. (ECF No. 1960 at 2).  It also noted that, upon a subsequent search of Defendant's vehicle, the Pennsylvania State Police located 5 grams of methamphetamine and drug paraphernalia.  (*Id.*). The Probation Office added in its March 17 supplemental petition that, on March 16, 2023, it received the blood toxicology report related to Defendant's March 4 arrest, which reflected a positive test for amphetamines, methamphetamines, and benzodiazepine.  (ECF No. 1960 at 2).

A hearing on these revocation petitions was held before Magistrate Judge Pesto on March 20, 2023, (ECF No. 1964), and the Magistrate Judge ordered that Defendant be detained pending trial.  (ECF No. 1965).  On May 25, 2023, Defendant petitioned the Court to revoke its March 20 detention order.  (ECF No. 2000).[2]  The Court scheduled a hearing on Defendant's petition, (ECF No. 2006), and Defendant filed multiple supporting letters for the Court's consideration in advance thereof.  (ECF Nos. 2024–25, 2028, 2030).  The Court held this hearing on July 27, 2023, (ECF No. 2072), and an official hearing transcript was filed on August 7, 2023.  (ECF No. 2076).

## II.    FINDINGS OF FACT

The Court makes the following findings of fact:[3]

1.  Defendant has been on pretrial supervision by the Probation Office since June 2020.  (ECF No. 2076 at 11:1).

---

[2] Defendant filed a brief in support of this petition at ECF No. 2001.

[3] The Court notes that the Federal Rules of Evidence are likely not applicable at bond revocation hearings. *See United States v. Delker*, 757 F.2d 1390, 1396 (3d Cir. 1985) (noting that the "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at a detention hearing" under 18 U.S.C. § 3142); FED. R. EVID. 1101(d)(3) ("These rules—except for those on privilege—do not apply to the following: (3) miscellaneous proceedings such as" considering "whether to release on bail or otherwise").

2. While on pretrial release, Defendant frequently was non-responsive to the Probation Office's attempts to contact him.  (*See* ECF No. 2039 at 12:6–9; ECF No. 2040 at 12:1–13:4).

3. While on pretrial release, Defendant was unsuccessfully discharged from substance abuse treatment approximately six times.  (ECF No. 2076 at 10:5–6).

4. Defendant did successfully complete one short-term inpatient treatment.  (ECF No. 2076 at 10:7–8).  However, Defendant admitted to using methamphetamine on the night following his successful discharge from this treatment program, as well as on the following morning.  (*Id.* at 11:12–18).

5. On November 24, 2020, Defendant was found guilty of receiving stolen property in Pennsylvania state court at case number CP-14-CR-617-2020.  (ECF No. 2076 at 17:3–8).  Defendant received a sentence of 39 days to 23 months in jail for this conviction, and he was paroled from that sentence on December 14, 2020.  (*Id.* at 17:8–11).

6. In March 2021, while subject to a release condition of home detention, Defendant left his residence at approximately 3:00 a.m. and was subsequently pulled over by law enforcement.  (ECF No. 2076 at 9:24–10:12).  Defendant did not promptly report this law enforcement contact to the Probation Office.  (*Id.* at 10:12–13).

7. Defendant had a positive urine screen in August 2021.  (ECF No. 2040 at 11:12–13).  Defendant had three other positive urine screens between October 2022 and November 2022, regarding which he admitted to using drugs and signed drug usage admission forms.  (ECF No. 2076 at 9–14).  Defendant also admitted to using methamphetamine on a separate occasion in December 2022.  (*Id.* at 5:11–12).

8. On January 27, 2023, Defendant was admitted to a long-term inpatient treatment program

at Allegiance Rehabilitation.  (ECF No. 2076 at 5:18–20).  On or about February 10, 2023, Defendant left that program against facility advice.  (*Id.* at 5:20–22).

9.  Defendant was largely non-responsive to the Probation Office from January 2023 through March 2023.  (ECF No. 2076 at 5:15–17).

10.  A condition of Defendant's release was to participate in any aftercare if he left or completed treatment at an inpatient facility.  (ECF No. 2076 at 5:23–6:1).  However, following his departure from inpatient treatment at Allegiance, Defendant only attended one session at CenClear aftercare (on March 2, 2023).  (*Id.* at 6:1–3).

11.  On March 4, 2023, Defendant was arrested and charged with driving under the influence of controlled substances.  (ECF No. 2076 at 12:4–12).  According to the arresting officer's affidavit, the officer—Pennsylvania State Police Trooper Doran—found Defendant slumped over in his vehicle next to a straw with drug residue.  (*Id.* at 12:17–22); (*see also* ECF No. 2042 at 4:14–18).  Trooper Doran observed that Defendant was in control of his vehicle at that time.  (ECF No. 2076 at 13:6–9).  He took Defendant for a blood draw, and the toxicology report for this blood draw eventually returned positive for methamphetamines, amphetamines, and benzodiazepine.  (*Id.* at 12:23–13:1).  Trooper Doran also obtained a search warrant for Defendant's vehicle and, upon searching the vehicle, found that there was methamphetamine and drug paraphernalia located therein. (*Id.* at 13:2–5).

12.  The Probation Office does not have a proposed current release plan for Defendant.  (ECF No. 2076 at 13:16–18).  There is presently no approved residence or third-party custodian for Defendant.  (*Id.* at 13:19–22).  No arrangements have been made for an inpatient

rehabilitation facility to admit Defendant for treatment.  (*Id.* at 13:23–25).

## III.    CONCLUSIONS OF LAW

The Court agrees with Magistrate Judge Pesto that Defendant must be detained pending

trial.  Pursuant to the Bail Reform Act of 1984, a defendant "who has been released under [18

U.S.C. § 3142], and who has violated a condition of his release, is subject to a revocation of release,

an order of detention, and a prosecution for contempt of court."  18 U.S.C. § 3148(a).  A defendant

is subject to revocation, if, after a hearing, the judicial officer:

(1) finds that there is—
    (A) probable cause to believe that the person has committed a Federal, State, or
        local crime while on release; or
    (B) clear and convincing evidence that the person has violated any other condition
        of release; and
(2) finds that—
    (A) based on the factors set forth in section 3142(g) of this title, there is no condition
        or combination of conditions of release that will assure that the person will not
        flee or pose a danger to the safety of any other person or the community; or
    (B) the person is unlikely to abide by any condition or combination of conditions
        of release.

18 U.S.C. § 3148(b).

Based on its findings of fact, the Court finds probable cause to believe that Defendant has

committed multiple crimes while on pretrial release.  Defendant, by his own admission, has

frequently possessed and used methamphetamine and other narcotics.  (ECF No. 2040 at 11:12–

13; ECF No. 2076 at 5:9–14).  *See also* 35 P.S. § 780-113(a)(16).[4]  In addition, his recent charge for

---

[4] It is unlawful in Pennsylvania to
    [k]nowingly or intentionally possess[] a controlled or counterfeit substance by a person
    not registered under this act, or a practitioner not registered or licensed by the appropriate
    State board, unless the substance was obtained directly from, or pursuant to, a valid
    prescription order or order of a practitioner, or except as otherwise authorized by this act.

driving under the influence of controlled substances is strongly corroborated by the discovery of methamphetamine and drug paraphernalia in Defendant's vehicle following his arrest, as well as by the toxicology report reflecting the presence of methamphetamine and other narcotics in Defendant's blood on the night of the arrest. (ECF No. 2076 at 12:4–13:5).[5] Tellingly, Defendant's counsel's only argument regarding this DUI charge is that, as a general matter, "sometimes these charges work out favorably for the defense." (*Id.* at 16:20–22).[6]

The Court also finds that Defendant is unlikely to abide by certain release conditions—in particular, the condition that Defendant "not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner." (ECF No. 145 at 2). Defendant clearly suffers from severe drug addiction and other mental illness. The Probation Office has spent the past three years attempting to steer Defendant toward treatment for these afflictions, but Defendant has been either unwilling to engage with his treatment options or incapable of doing so. Defendant has been unsuccessfully discharged from treatment programs six times while on release, (ECF No. 2076 at 10:5–6), and the Court is pessimistic about the potential for another round of court-ordered treatment to ensure

---

35 P.S. § 780-113(a)(16). A "controlled substance" is a "drug, substance, or immediate precursor included in Schedules I through V of this act." *Id.* § 780-102 (citing *id.* § 780-104). Methamphetamine is a Schedule II controlled substance. *Id.* § 780-104(2)(iii)(4).

[5] The Court does not include here Defendant's conviction for receiving stolen property in November 2020. (ECF No. 2076 at 17:3–8). Although the conviction occurred while Defendant was subject to the Court's conditions of pretrial release, bail for that offense was initially set on April 3, 2020, which means that the crime itself must have been committed before Defendant was placed on pretrial release in this matter on June 9, 2020. *See Commw. of Pa. v. Shane Thomas Hoover*, No. CP-14-CR-0000617-2020 (filed June 24, 2020).

[6] Given this evidence of unlawful conduct, the Court need not also find clear and convincing evidence that Defendant violated a condition of release. But the record contains ample evidence showing that Defendant violated multiple conditions of his release apart from his criminal behavior. Defendant frequently failed to participate in his mandated substance abuse treatment programming, (ECF No. 2076 at 5:23–6:3), departed from his residence without authorization while on home confinement, (*id.* at 9:24–10:12), and failed to report contact with law enforcement personnel in a timely manner. (*Id.* at 10:12–13).

Defendant's compliance.  This is particularly true of outpatient treatment, although inpatient treatment has also proven ineffective thus far.  Indeed, the one instance where Defendant did complete inpatient treatment was followed by a virtually immediate relapse.  (*Id.* at 11:7–18).  It is also not clear that additional inpatient treatment is even an option at present, given that there do not appear to be any inpatient programs that could presently accommodate Defendant.  (*See id.* at 13:16–25, 19:11–14).  Because the parties have identified no other, more promising means of bringing Defendant into compliance with his release condition prohibiting use of illegal narcotics, the Court concludes that Defendant is unlikely to abide by that condition moving forward.[7]

Because the Court has found both (a) probable cause to believe that Defendant committed a crime on pretrial release, and (b) that Defendant is unlikely to comply with any condition of his release moving forward, it must revoke Defendant's pretrial release.  *See* 18 U.S.C. § 3148(b).

An appropriate order follows.

---

[7] This Court recently reached a similar holding in *United States v. Hartnett*, No. 22-CR-53-8, 2023 WL 4239601 (W.D. Pa. June 28, 2023).  In that case, the Court denied a defendant's motion for reconsideration of a bond revocation order after concluding that the defendant was unlikely to abide by her release condition of not violating federal, state, or local laws, based on numerous failed drug tests and failed attempts to complete inpatient treatment.  *Id.* at *2.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:20-cr-07 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| SHANE HOOVER, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this ___17th___ day of August, 2023, **IT IS HEREBY ORDERED** Defendant's

Petition to Revoke Order of Detention, (ECF No. 2000), is **DENIED WITHOUT PREJUDICE**.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

14